O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| DAVID FROST, | Case No. EDCV 12-00212-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff David Frost seeks judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. 42 U.S.C. § 1381 *et seq*. For the reasons set forth below, the decision of the Commissioner is affirmed.

**I.   Background**

Plaintiff was born on December 14, 1956. (Administrative Record ("AR") at 117.) He has a high school education and has work experience as a hydraulic technician and clerk. (AR at 123, 127.) Plaintiff filed his application for SSI benefits on November 18, 2008, alleging disability since April 12, 2008 due to depression. (AR at 10,

51.)

Plaintiff's application was denied initially on March 4, 2009, and upon reconsideration on June 4, 2009. (AR at 52-56, 57-61.) An administrative hearing was held on September 1, 2010, before Administrative Law Judge ("ALJ") Joseph Schloss. Plaintiff, represented by counsel, testified, as did a Vocational Expert ("VE"). (AR at 25-38.)

On October 18, 2010, ALJ Schloss issued an unfavorable decision. (AR at 10-19.) The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR at 13.) The ALJ further found that pursuant to 20 C.F.R. 416.920(c), the medical evidence established that Plaintiff suffered from the severe impairment of a depressive disorder with anxiety features. (Id.) However, the ALJ concluded that Plaintiff's impairments did not meet nor equal, one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Id.)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: "the claimant is precluded from work that requires safety operation, responsibility for the safety of others, and hypervigilance." (AR at 14.) The ALJ concluded, based on the VE's testimony that there were a significant number of jobs in the national economy that Plaintiff could perform, such as industrial cleaner, hand packager, and bench assembler. (AR at 18-19.) The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(f). (AR at 19.)

On January 6, 2012, the Appeals Council denied review (AR at 1-3). Plaintiff timely commenced this action for judicial review. On August 13, 2012, the parties filed a Joint Stipulation ("Joint Stip.") of

disputed facts and issues. Plaintiff contends that the ALJ erred in failing to: (1) properly consider the treating physician's opinion; (2) consider the side effects of Plaintiff's medication; (3) provide a complete assessment of Plaintiff's RFC; (4) pose a complete hypothetical question to the VE; and (5) properly consider lay witness testimony. (Joint Stip. at 2-3.) Plaintiff seeks reversal of the Commissioner's denial of his application and payment of benefits or, in the alternative, remand for a new administrative hearing. (Joint Stip. at 27.) The Commissioner requests that the ALJ's decision be affirmed. (Id.)

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

III. Discussion

### A. The ALJ Accorded Appropriate Weight to the Opinion of Plaintiff's Treating Physician

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Amador. (Joint Stip. at 3.) On December 9, 2008, Dr. Amador completed an assessment which concluded that Plaintiff had the following mental limitations: he could not maintain a sustained level of concentration; he could not sustain repetitive tasks for an extended period; he could not adapt to new or stressful situations; and he could not complete a 40 hour work week without decompensating. (AR at 211.)

An ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *accord Tonapetyan*, 242 F.3d at 1149. The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Orn*, 495 F.3d at 631-33; 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii).

//

The ALJ provided legitimate reasons for refusing to give Dr. Amador's opinion controlling weight, which were supported by substantial evidence in the record. The ALJ reviewed and summarized Plaintiff's relevant mental health records from November 2007 to October 2009. (AR at 15-17.) After discussing these records in detail, the ALJ found that the December 9, 2008 one-page assessment was not reliable because there were no treatment records or diagnostic findings to support the extreme limitations found by Dr. Amador and because Dr. Amador's own treatment records contradicted his finding of extreme limitations. (AR at 17.). In summing up the treatment records, the ALJ found as follows:

> For example, Dr. Amador reported that the claimant exhibited paranoia because he said the "world was out to get me," but on November 20, 2008, the last time he saw the claimant before completing this report, Dr. Amador attributed that statement to the claimant's frustration over his inability to obtain disability benefits. Dr. Amador also indicated that the claimant was moderately impaired in memory and judgment; there was evidence of confusion and insomnia; and the claimant could not maintain a sustained level of concentration, sustain repetitive tasks for an extended period, adapt to new or stressful situations, or complete a 40-hour week without decompensating. However, on November 20, 2009, the claimant had appropriate attention and concentration. The undersigned declines to adopt Dr. Amador's opinion because it is contradicted by the overall treatment notes, which reflect primarily the claimant's complaints and frustration with his financial status and the Social Security system, and not objective findings, which would preclude all work activity.

(AR at 17.)

An ALJ may properly discredit a treating physician's opinion if it is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Tonapetyan*, 242 F.3d at 1149. The ALS's determination was appropriate under this standard.

Finally, Plaintiff's contention that the ALJ should have re-contacted Dr. Amador for clarification or additional evidence is not persuasive. An ALJ has a duty to recontact a treating source only where the record is ambiguous or inadequate. *See* 20 C.F.R. § 404.1513(b)(6); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (explaining that the ALJ's duty to develop the record is triggered if the record is ambiguous or undeveloped). However, this is not a case where the evidence was inadequate to assess Dr. Amador's opinion or make a disability determination. As noted above, neither the overall record nor Dr. Amador's own treatment notes support his conclusion that Plaintiff could not work. The fact that the medical records do not support Dr. Amador's opinion does not render the records ambiguous such that the ALJ's duty to supplement the record was triggered. Instead, Dr. Amador's opinion on the ultimate issue of disability was simply not supported by the record. Accordingly, the ALJ did not err in rejecting Dr. Amador's opinion without recontacting him for clarification.

**B.   The ALJ Properly Considered the Type, Dosage, and Side Effects of Plaintiff's Medication**

Plaintiff asserts that the ALJ erred by failing to specifically discuss the type, dosage, and side effects of Plaintiff's medications in his unfavorable decision. (Joint Stip. at 11.) In support of this argument, Plaintiff notes (1) that he was taking the prescription

medications Effexor and Tramadol;[1] and (2) that he testified at the administrative hearing that the medications gave him headaches and dry mouth and made him vomit.

"The ALJ must consider *all factors* that might have a 'significant impact on an individual's ability to work.'" *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993) (emphasis in original) (quoting *Varney v. Secretary of Health & Human Serv.*, 846 F.2d 581, 585 (9th Cir. 1987)), *relief modified*, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." *Erickson*, 9 F.3d at 818; *Varney*, 846 F.3d at 585 ("[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized.") (citation omitted). However, Plaintiff bears the burden of producing medical evidence to show that any claimed side effects from medication are severe enough to interfere with his ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001).

Here, a review of Plaintiff's medical records reveals no objective evidence of disabling side effects from medications that would prevent Plaintiff from working. Plaintiff was prescribed Trazodone for insomnia and there were no reports of any side effects. (*See, e.g.,* AR at 126, 156, 165, 199, 227, 228, 247, 23, 254.) Similarly, there was only one mention in November 2006 that the Effexor was giving Plaintiff an upset stomach. (AR at 207.) Plaintiff's dosage of Effexor was then reduced from 150 milligrams to 75 milligrams, a dosage which he took for many

---

[1] It appears that Plaintiff was actually prescribed Trazadone, not Tramadol. Trazadone is used to treat depression and insomnia, while Tramadol is used to relieve moderate to moderately severe pain. http://www.nlm.nih.gov.

years without any apparent serious side effects. (AR at 201, 217, 226, 232, 233, 234, 242, 248, 263.) Furthermore, the treatment notes reflect that Plaintiff complained of chronic vomiting, but it was repeatedly attributed to an unknown etiology, rather than to his medications. (AR at 218, 219, 221, 248, 255, 256.)

In support of his claim, Plaintiff cites to WebMD[2] for a myriad of possible side effects caused by the medications Effexor and Tramadol. (Joint Stp. at 13). The Court notes that the Social Security regulations do not require an ALJ to consider a claimant's medications as part of every disability determination. The mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any one of the possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working because of those side effects.

Accordingly, because there was no evidence in the medical record regarding any serious side effects from Plaintiff's medication, the ALJ's failure to discuss these alleged side effects was not error. *See Osenbrock*, 240 F.3d at 1164 (finding that "passing mentions of the side effects of ... medication in some of the medical records" was insufficient evidence); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (finding no error in ALJ's lack of discussion regarding drowsiness from medication where the only evidence of side effects came through the claimant's subjective testimony); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (finding no error where medical evidence

---

[2] http://www.webmd.com/drugs/index-drugs.aspx

did not show that claimant's prescribed narcotics limited his ability to care for himself or relate to others).

### C. The ALJ Properly Assessed Plaintiff's RFC

Plaintiff contends that the ALJ erred in determining Plaintiff's RFC because the ALJ did not take into account the limitations found in Dr. Amador's December 9, 2008 assessment, or those found by Dr. Kim on March 23, 2010, who opined that Plaintiff was experiencing paranoid delusions and had poor concentration and slightly impaired long-term memory. (Joint Stip. at 15, citing AR at 211, 243.) As noted, the ALJ determined that Plaintiff retained the RFC to perform all work except for that involving safety operation, responsibility for the safety of others, and hypervigilance. (AR at 14.) Plaintiff argues that if the ALJ had included the opinions of Drs. Amador and Kim in his RFC assessment, he would have been found disabled. (Joint Stip. at 16-17.)

A claimant's RFC is what he is capable of doing despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 9608p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An RFC assessment is ultimately an administrative finding reserved to the Commissioner, based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1527(e)(2).

Substantial evidence supported the ALJ's determination of Plaintiff's RFC. First, as discussed in detail above, the ALJ gave appropriate weight to Dr. Amador's unsupported and conclusory December 8, 2008 assessment. Similarly, Dr. Kim's March 23, 2010 report was

merely a "check-the-box" form without any supporting clinical or laboratory findings or any explanation for Dr. Kim's opinions. (AR at 243.) *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions"). Aside from these two opinions, there was no other medical evidence in the record to support a more restrictive RFC. Thus, the ALJ was not obligated to include these limitations in his assessment of Plaintiff's RFC.

Further, the ALJ properly relied on the opinion of the state agency reviewing psychiatrists, "who determined that the claimant's mental impairment was not severe and that the claimant had mild limitations in activities of daily living, mild limitations in social functioning, mild limitations in concentration, persistence or pace; and no episodes of decompensation." (AR at 17, citing AR at 190-192, 193-197, 235-238.) The ALJ properly included in his RFC determination only those limitations that were supported by the medical evidence of record. *See Bayliss*, 427 F.3d at 1217 (finding RFC determination proper where "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints"). Plaintiff is therefore not entitled to relief as to this claim of error.

**D. The ALJ Posed a Complete Hypothetical Question to the VE**

Plaintiff contends that the ALJ failed to pose a complete hypothetical question to the VE because it did not include the limitations found by Drs. Amador or Kim. (Joint Stip. at 19.)

At the administrative hearing, the ALJ posed the following

hypothetical question to the VE:

> Q: So we are going to assume an individual of fifty-four years of age with no relevant past work. He has no exertional limitations of any sort. This person's only limitations are that he should not have a job where he is responsible for the safety of others. He should not have hypervigilance. Would there be jobs for that type of person please?
>
> A: Yes.

(AR at 33-34.)

One way for the Commissioner to show that a Social Security claimant can engage in substantial gainful activity is to pose a hypothetical to a VE that reflects all of the claimant's limitations. The ALJ is not required to include in the hypothetical to the VE limitations that he did not find to exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [Plaintiff] had claimed, but had failed to prove."); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1164-1165 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").

Here the ALJ included all of the limitations that he found to exist, each of which was supported by the opinions of the state agency physicians. *See Magallanes v. Bowen*, 881 F.2d 747, 757 (9th Cir. 1989) ("The limitation of evidence in a hypothetical is objectionable 'only if the assumed facts could not be supported by the record.'") (*quoting Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). The ALJ was not

required to include in Plaintiff's RFC the limitations found by Drs. Amador and Kim because, as discussed in detail above, they were not supported by the medical record as a whole or by the treatment notes. There was no error in the hypothetical question the ALJ posed to the VE, and Plaintiff is not entitled to relief on this claim.

### E. The ALJ Properly Considered the Lay Witness Testimony

Plaintiff contends that the ALJ improperly discounted the statements of lay witness Richard DeForest. (Joint Stip. at 22.) On December 1, 2008, Mr. DeForest, a friend of Plaintiff with whom Plaintiff lives, completed a Third Party Function Report, detailing his observations of Plaintiff's abilities and daily activities. (AR at 139-146.) The ALJ did not give great weight to Mr. DeForest's opinion:

> Mr. DeForest stated when he met the claimant, the claimant was homeless; the claimant now rents a room from Mr. DeForest so there is a motive for secondary gain because the claimant has no income other than general relief. More importantly, Mr. DeForest's opinion is not supported by the evidence. There is no evidence the claimant has significant memory problems such that he needs reminders to shower, eat, or take medicine. There is no evidence the claimant has significant depression which confines him to bed. Mr. DeForest indicated the claimant has several exertional limitations, but there is no evidence the claimant is limited in lifting, squatting, standing, walking, kneeling, or stair climbing; nor is there evidence the claimant has significant mental impairments which limit his memory, completing tasks or concentrating.

(AR at 17-18.)

//

A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512.

It was improper for the ALJ to discredit the report on the ground that Mr. DeForest "has a motive for secondary gain." (AR at 18). While some courts have held that an ALJ may consider a witness' financial interest in the award of benefits in evaluating their credibility,[3] the Ninth Circuit has consistently held that bias cannot be presumed from a familial or personal relationship. *See, e.g., Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). This is because a personal relationship is a necessity for lay witness testimony since it is provided by people "in a position to observe a claimant's symptoms and daily activities." *Dodrill*, 12 F.3d at 918. The ALJ's reasoning that witnesses who live with or support a claimant are not credible for reasons of bias cannot be considered legally proper, since the same rationale could be used to reject lay witness testimony in almost every case.

Where one of the ALJ's several reasons supporting an adverse credibility finding is invalid, the Court applies a harmless error standard. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155,

---

[3]   *See Buckner v. Apfel,* 213 F.3d 1006, 1013 (8th Cir. 2000); *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988).

1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-1197 (9th Cir. 2004)). As long as there remains "substantial evidence supporting the ALJ's conclusions on ... credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. *Id*. at 1197; *see also Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006)(defining harmless error as such error that is "irrelevant to the ALJ's ultimate disability conclusion").

    Although the ALJ improperly rejected the report on the basis of Mr. DeForest's alleged financial interest in Plaintiff's obtaining SSI benefits, the ALJ also provided a legitimate reason for his credibility determination. The ALJ noted that Mr. DeForest's statements regarding Plaintiff's alleged mental and physical limitations were unsupported by the medical record. (AR at 17-18.) As discussed in detail above, there was no credible evidence in the record which showed that Plaintiff's depression was disabling. Inconsistency with the medical evidence is a germane reason for discrediting the testimony of a lay witness. *Bayliss*, 427 F.3d at 1218. Accordingly, despite the ALJ's improper reliance upon Mr. DeForest's alleged financial interest in Plaintiff obtaining SSI benefits, any error was harmless as the ALJ provided a proper and legitimate reason for rejecting Mr. DeForest's written statement.

    In addition, unlike lay *testimony*, there is no controlling precedent requiring an ALJ to explicitly address *written* statements, such as the Third Party Function Report in this case. Indeed, it is clear that an ALJ is not required to discuss all evidence in the record in detail. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Accordingly, Plaintiff's claim is without merit.

**IV. Conclusion**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case be dismissed with prejudice.

DATED: August 24, 2012

_____
Marc L. Goldman
United States Magistrate Judge